We'll turn to the next case on the calendar, Brathwaite v. Rosen. Mr. Pang, you can proceed. Thank you, your honors. May it please the court, John Pang, representing the petitioner, Aldwin Jr. Brathwaite. With the court's permission, I'd like to reserve one minute for rebuttal. Your honors, this case can and should be decided at Chevron Step 1 because the board's decision in Jayam Acosta violates Congress's clear intent to preserve the finality principle pass iris. In Marino v. INS, this court articulated that traditional understanding. A non-citizen's criminal conviction attains sufficient finality for immigration purposes only once direct appellate review has been exhausted or waived. Jayam Acosta's presumption of finality subverts congressional intent because it imposes a burden upon non-citizens that is effectively impossible to meet. Much like this court did in Newark v. USDHS, it should apply the ratification canon and find out where Congress codifies a term that contains a settled judicial history and interpretation. It is presumed to ratify that entire interpretation. Your honors, the practical impossibility— Your adversary suggests that we have ambiguity here. I mean, he's happy to requirement, but he says that's because the agency resolved the ambiguity that way. And as I understand it, the argument for ambiguity comes from the textual reference to the court entering the judgment, which the suggestion is that that's the trial court doing that, that it doesn't contemplate. But since that language comes from the Ozark decision, I think it is, which has the footnote about finality that they're not prepared to assume that Congress was simply throwing it out. Why should we not agree that there's at least sufficient ambiguity to allow the board to make the finality decision at step one, and then we get to whether they can also make an evidentiary requirement for finality? But why don't we start with why they don't get to decide that there's sufficient ambiguity as to whether Congress wanted finality? Your honor, I think two parts to that. I think the first part is the argument for ambiguity really comes from statutory silence, congressional silence directly on point. And I think Supreme Court's guidance in William v. Taylor provides that when the Congress is using language that has been used by a court in a previous matter, it is respectful of Congress and the court's own processes to give those words the same meaning. My question, which really cuts on Judge Raji's question, is are we allowed, where there is an ambiguous statute, to say that we follow the BIA with respect to part of the solution of the ambiguity, but not necessarily with respect to what they say after that, so that we can take Acosta as being a decision by the BIA that finality still remains, and then not necessarily accept the second part of Acosta as to what then happens to show, to meet finality after that. And that then becomes a question of what happens in New York, how New York deals with these things, and so on. Why isn't that something that's perfectly appropriate for us to do? Right, Your Honor. I think that would be appropriate. Again, even under Chevron Statute, the BIA is only owed deference if it's reasonable and if it shows that it considered the matter in a coherent manner. And so even under Chevron Statute, I think the unreasonable interpretation. Again, the standard has been that pretty much a binary, that something, a conviction is either final or not final. And the way you determine that is once direct appellate review has been exhausted or waived. And so that is kind of a standard that I think is applicable, as Your Honor suggested, where the presumption is almost an undercutting mechanism that disrupts the entire congressional intent in that sense. And so again, I think perhaps, Your Honor, the impossibility of the standard, which is the dispute, is best illustrated by Garza v. Idaho, in which the Supreme Court discusses and delineates the significance or lack thereof of the notice of appeal stage. At that stage, the defendant likely does not have important documents from the trial stage, such as transcripts of key proceedings. They may be in custody. They may be in the process of changing counsel. All of these factors, Your Honors, I see I'm out of time. May I briefly wrap up? Yes, you can. Thank you. All of these factors were present in Mr. Brackley's case. And I think they also serve to illustrate, just again, why it's so difficult to overcome a presumption of finality principle, where the non-citizen holds a burden of proof to prove something that they simply cannot prove. It's at a stage in the proceedings, the notice of appeal stage, where there is nothing for either party to decide, and much less an immigration judge, to ascertain what the substantive issues that will be raised on appeal. And so, for that reason, Your Honor, I think this case can be decided at Chevron Step 1. And Congress should be owed that respect in saying that they are aware of the judicial history, and that judicial history survived IRA, IRA. Thank you, Your Honors. But, Jim, may I ask one or two more questions of counsel? Sure. Of course. Counsel, just assume for a moment that we do adopt finality, their finality interpretation of a cost, and we get to that second question about what could they demand. I mean, you do agree here that the whole reason for wanting finality is that there's a chance that on appeal the conviction could be overturned. So, I think the Board's position, or the Department of Homeland Security's position, is if the argument on appeal is not going to result in overturning the conviction, but rather perhaps in reducing the sentence or something akin to that, it shouldn't hold up deportation. Do you want to tell us why you think that is or is not a sound way for us to look at this? Your Honors, I think that is a sound way to look at it, and I think both the Board and Government Counsel points out this comes up in the post-conviction context with matter of pickering and so on. I think the important differences here are, one, in the post-conviction context, a full record has essentially been produced. A criminal appellate attorney has reviewed that and ostensibly identified reasons to pursue post-conviction belief. And two, again, I think it goes back to the question of can you satisfy that burden at this stage? Can you satisfy a burden of... Sorry. No, I wanted to be sure. So, are you suggesting that once Mr. Brathwaite is in a position to file his appellate brief, if that brief does not raise an argument that could result in the vacater or reversal of his conviction, that the Board can then proceed even though the appeal hasn't been decided? Well, so, Your Honor, I think there would get into a territory where now you can look into substantive issues. So, you're not so much quarreling their ability to define finality, you're challenging the definition they've come up with, which is requiring you to show... Requiring you to come up with a brief now before you've had a chance to even get the record. Is that basically the argument? More or less, Your Honor. Yes, it's challenging that interpretation and also the burden-shifting scheme where non-citizens... Now, if I recognize that they want a brief, they're not prepared to take counsel's representation. And I also know that counsel was appointed on appeal, not trial counsel. But if I understand the record correctly, Mr. Brathwaite pleaded guilty. This wasn't a trial. Correct. Are you in any position to tell us or to tell DHS that there is going to be a merits-based argument here, that he's either going to look to withdraw his plea or something that will get to the merits? Are you in any with appellate counsel was last week. They indicate that they have acquired at least one plea colloquy from one of Mr. Brathwaite's cases. They said in that plea colloquy, the trial judge did not inform Mr. Brathwaite as his plea could lead to immigration removal. And that would be a basis for remand under New York State law. They are still waiting for the full record to be given to them by the trial court below. And so they still aren't prepared to identify the full range of substantive issues. But again, I think it does at least show this first partial review that Mr. Brathwaite at least has one claim on one of his cases where the trial judge did err and did not provide Mr. Brathwaite the adequate advisers based on his plea. Thank you. Let's hear from your colleague, Mr. Vorkink. Good morning, Your Honors. May it please the Court, Mark W. Vorkink of Appellate Advocates for the amici urging reversal. Your Honors, what Petitioner proffered here in support of his motion to terminate is all too common in New York State for defendants in removal proceedings with Acosta's burden-shifting framework for establishing non-finality is practically impossible to satisfy for most defendants. Before you even get to the burden-shifting, I mean, do we need to get there? I mean, if this is a timely appeal, then we don't need to get to the second part. Isn't that the first argument? We would agree, Your Honor, completely. And that's the first point of amici's brief, which is simply that Acosta misapprehends the timeliness of how criminal appeals are prosecuted in New York State, which is to say that Acosta basically says that after 30 days have expired, if a notice of appeal hasn't been filed, it is by definition non-timely. But New York, pursuant to New York criminal procedure law... Your position is that this was a timely appeal, even though because it was filed within the time allowed by the criminal procedure law. Precisely, Your Honor. The appellate division in New York State would deem this appeal to be timely and treat it as such. So whether... I'm curious about one thing. Do you concede that the government, the BIA, could make some requirements in these cases? For instance, to say that the appeal is brought simply for immigration purposes rather than on the merits or something of that sort. Do you concede that the government could put in some things of that sort, but you're saying that what they have put in here is not realistic? In a sense, Your Honor, and this in some ways goes to Judge Raji's question, which is simply that the problem with the ACOSTA framework is that it places a burden on a defendant that the defendant cannot satisfy because the defendant does not possess the tools to make any kind of showing, because, of course, they lack the trial court record, and many defendants also lack appellate counsel. Of course, most criminal defendants are indigent in New York State and so would have to be appointed counsel, and only upon the order of the appellate division appointing counsel is the delay is attendant to both of those processes, the production of the trial court record. Help us out a bit. We don't want to decide more than we need to decide to decide a case. On the other hand, we don't want to create a situation where a whole lot of other cases just keep coming up to raise the same thing, which is quite unnecessary. So what is it that you think we should do? We should say that ACOSTA is right in setting up, in saying that finality survives, and then what do we do about the second part of ACOSTA? What is it that you would have us do to make it both decide this case and do something useful for the future? Sure, Your Honor. I think Amiki's perspective, and again, the perspective of New York practitioners, so I just want to make our viewpoint clear, would be that, I mean, at a maximum extent, it would be when the direct appeal is over, in effect. There's been a ruling by the appellate division, and it is, in effect, final for state law purposes. I think at a minimum, and Judge Raji, this goes to your question, is when the appellate brief for the direct appeal has been filed, because at that point, clearly, appellate counsel has identified the issues to be raised on appeal, and it's easy for the BIA, for the immigration, to make a determination as to whether or not those issues are, in effect, merits-based. And I think, so in either of those two scenarios, clearly, the defendant has had an opportunity to obtain the relevant record that is necessary in order to make an assessment of what issues could be raised on appeal, and then been able to make a full-throated showing to the New York State Appellate Division as to what issues should be raised. And I think in both of those contexts, I'm sorry, Your Honor. I'm sorry. I'm going to ask some of these questions of respondent, but I want to know your position on this. It seems to me that if we take the view that once there's an appeal, whether filed within 30 days or filed within a year and 30 days on an extension, but then say, well, if it's not going to be merits, if it's not a merits argument, we're going to consider that a final conviction, even before the appellate court has ruled. Where does that come from? I mean, I'm aware of cases that's when the trial court enters the judgment. And I'm aware of cases that say a conviction is final when appellate review has either concluded or been waived. But I'm not aware of where we come up with an idea that a decision is final, depending on what arguments are made. I mean, I understand that it makes sense. It's not the conviction is not going to be upset. And so the DHS has an interest in deportation. But as a matter of interpreting when a conviction is final, why are you saying we can do that? Well, I think this was an attempt to compromise, Your Honor. No, no. And I appreciate that. I think that in truth, our true position would be when the appellate division rules, then for all intents and purposes, the conviction is final under state law principles. I mean, obviously, under state law, there's an opportunity to seek leave to the New York Court of Appeals. But because that is, you know, it's akin to certiorari, it's discretionary. When the appellate division has made a determination, then the conviction is final. And so, I mean, our perspective would be that that's the clearest rule, both for the federal court and for the BIA. Am I correct that this is a matter of a circuit split? That there are circuits that think it's final when the trial court enters the judgment? I believe so, Your Honor. I don't want to speak as an authority on that, just because it wasn't addressed in our briefs. Thank you. Thank you. Okay. If I could raise one final point with Your Honor's indulgence. Go ahead. I just want to put, of course, the principal thrust of our brief is, of course, the delays attendant to the appellate process. But one thing I do want to underscore is that this process is not indefinite, which is an argument that has been made by the government in its briefs. The New York appellate division has a variety of tools at its disposal to ensure that appeals are prosecuted expeditiously, both by statute and both administratively, in terms of letters to appellate counsel. And so, the appellate division makes a considerable effort to move appeals along. And so, really, what Amici's position is, is that let New York courts see this process through and let criminal appellants have the opportunity to make the arguments that they can. And so, for all of those reasons, we would urge reversal of the BIA's decision. Thank you. We'll hear from Mr. McManus. Thank you, Your Honor. Good morning. And may it please the court, Keith McManus, on behalf of the respondent. There's a lot to unpack here, Your Honor, so I'd like to start, if we could, at the beginning. And I think this goes back to Judge Raji and Judge Calabresi's initial questions about whether the court should first start with the question of resolving the finality requirement based on either ambiguity or lack thereof. And obviously, the parties actually agree on the ultimate result, which is that finality has survived ERIRA. The only difference is how we get there. But we think, given the board's — you know, obviously, the board took up the call from this court, issued in Ebreu, you know, almost, what, eight, nine years ago, to address that very issue. And its reasoned decision here explains why, despite ambiguity, you know, the lack — there's clearly silence in the statutory language itself, which says nothing about finality. And given the existing rule and then the intervening statutory amendment, the board decided that, although there is ambiguity, the rule should still survive. And we think that's the most reasoned approach to reaching that conclusion. If nothing else — If you agree that the finality rule applies, why wasn't this a timely appeal? I mean, under New York law, it's filed within the time for an extension. The appellate division in granting the extension says the moving papers are deemed as a timely filed notice of appeal. Right. So why do we even get to the second part? Well, to be clear, Your Honor, we've never argued otherwise in terms of timeliness. And actually, we try to make clear, as the board did in this case and Acosta, that timeliness is not the issue. That's sort of a red herring. The parties actually acknowledged throughout the briefing that Mr. Brothwaite has a direct appeal pending in New York State. The fact that it was late filed, what that ends up doing is giving rise to this new presumption that the board created. But my problem really is the question that Judge Raji asked at the end. If finality survives, why, when there is an appeal, can we say that this isn't final, that this is final? I mean, you know, what an appeal is on, if we start looking at appeals and saying they're arguing this, they're arguing that, they're arguing the other. Now, I can understand a position that says an appeal ends when you get to asking for cert beyond that, and that's the end of it. But why get courts in the impossible business of looking at what is being argued in an appeal when the case isn't final because there is an appeal? Why isn't that just ordinary language, ordinary day-to-day things? Why should we get to a point where we can say, you know, if there was a pending appeal, the conviction was considered non-final. The general rule was, as Mr. Pang sort of described, binary, that if there was a pending appeal, the conviction was considered non-final. But the point here is that IRERA sort of throws a wrench in that. I may agree with you that IRERA may be uncertain as to whether finality continues, but the BIA has said it does. Now, what I'm saying, Your Honor, is that you start with that language, and then what this does is... Tell us what language you think supports this. Sure. So, Your Honor, I want to... I think the closest parallel here, and again, this came up a couple times, and it's in the Board's decision, although I admit that the... Tell us the statutory language. Sure. It's the definition of conviction, which the first part reads that a conviction is a formal judgment of guilt of the alien entered by a court. And that is the entire analysis emanates. And I think, again, Your Honor... And you're construing that language, which you say is ambiguous, to mean what? So, two things. One, that the finality rule continues, but in a very narrow way. And that's where, to answer Judge Calabresi's question, we get to the second prong of a... But how do you read that second prong into that language? I mean, I can understand somebody reading that language to say, no, finality isn't there. I might agree with that or not, but I can understand that. Or reading it to say, no, finality increases. But how do you read into that ambiguity? Oh, finality continues only in cases A, B, C, D, and E, but not G, and E, and F. I mean, how can you read that into that language? So, I think, Your Honor, the only way to do that, because, admittedly, the board's analysis here is fairly thin, but they do clearly draw parallels between direct appeals, as an issue in this case, and collateral attacks that, you know... Well, there are differences. Of course, there are differences between collateral attacks and direct appeals. That's so in the language. They're in any number. You could do any number of other things. You could also say a direct appeal still doesn't stop deportation if a direct appeal is done to avoid immigration. You know, there are any number of things that could be written into it. My problem is, what's there? Well, but Your Honor, that actually proves the point in terms of deference to the board's interpretation of an ambiguous statutory phrase. And I think, again, the greatest parallel we can draw here is this court's decision in Salah, or Saleh. Forgive me if I'm mispronouncing that, but that is the decision in which this court deferred to a similar interpretation in the post-conviction context. I acknowledge, Your Honor, there are clear differences between direct appeals as a right and post-conviction remedies, but the analysis that both the board and the court took in these contexts is relevant here, because it starts, again, with the statutory language. And because there is ambiguity there, the board is entitled to interpret that in a permissible way. It doesn't have to be the best way, and the court may certainly disagree with the way the board got there. Look, the board is entitled to interpret ambiguity, but the board is not entitled to worries that there are at the Supreme Court about our deference to administrative agencies when they go wild and so on. I don't go that far, but I must say that the idea that the agency can simply rewrite the statute rather than interpret an ambiguity leaves me a little bit troubled. Your Honor, the implication that the board is rewriting the statute suggests that finality is somewhere within the statute. It's not. The statute says nothing about finality. What you're telling us is that you're interpreting it to support a hybrid finale. Absolutely. Where does that come from? You're still supposed to decide what was Congress's intent. It just doesn't seem apparent to me where we would say that Congress now intended to allow finality to go through appeal, depending on what your brief says. So, Your Honor, again, I think the closest parallel is the way the board arrived at the same type of result in the post-conviction context. And let me explain. As this court made clearance a lot, the board started from this notion that when Congress amended ERIRA, it had done so because state definitions of conviction had kind of frustrated congressional intent. Form had been placed over substance, and the definition of conviction was dependent on state vagaries. And so when Congress amended the statute to create the current definition, the BIA identified two primary aims that it thought Congress was trying to accomplish. Again, the court recognizes this in Salah. That was to focus the conviction inquiry on the original determination of guilt, which is what the statutory language that I read to you, Judge Rodgers, says, and to, quote, implement a uniform federal approach. And much like the board's rules in Pickering, to which this court deferred, the rule here creates uniformity in how we treat direct appeals and for purposes of finality. And again, I want to make clear also that Brathwaite's case is somewhat unique in the sense that it gives rise—my time has expired, Your Honor, but may I continue answering your question? Brathwaite's case shows that the board's exception only applies, or the presumption only arises, in those limited circumstances where the initial appeal period under whatever state law applies. In this case, it happens to be New York. Where does it say that? That there is a distinction between an initial appeal period and an extended period? I mean, I could see the difference for direct appeal versus collateral tax. But once—I mean, as I understand it, under New York law, there's no distinction between an appeal filed within 30 days and an appeal filed within a year and 30 days once that motion is granted. There is no distinction, Your Honor, but what the board is doing is drawing a line for all jurisdictions, not just New York, about where finality kicks in. And I thought that the way Acosta reads is at step one, all DHS has to do is show that the time for filing a direct appeal has passed, which I understood you to be taking the view in New York is 30 days. So once we're at 35 days, then there's a presumption of finality that the respondent has to rebut. And he has to come forward with evidence not only that the appeal has been I understood that if at day 35, the board came in and said times for appeal has passed, and the defendant were to say, no, no, I filed my notice of appeal on day 25. So he's got—he's filed within the original time set by New York. You take the position, DHS, that is, that he has to show that he's got a merits argument. Is that right? So I'm the board, Your Honor. I don't speak for DHS in this context. And I want to be clear about and dispel any notion about how this is an impossible standard to me. To answer your question, though— Well, that's going to be my next question. But I thought that Acosta says this applies whether we're in what I'll call the timely appeal filed within 30 days or whether you needed an extension. So what Acosta says is— The board just gets to come in on day 35 and say, presumption applies, Matt, or the conviction is final. And he has to say, no, I've got a notice of appeal pending, and it's going to challenge the merits. Is that right? That is right, Your Honor. And I'll read the part of the board's order that I think is most relevant to your question. Absent proof of a waiver of the appeals right, a conviction does not achieve finality for immigration purposes until the time for filing an initial direct appeal has expired under the laws of the applicable jurisdiction. So, and again, let's not lose sight of the realities of what happened here. Mr. Brathwaite was previously ordered— I'm sorry, previously placed in proceedings in 2008 and 2009. No, I understand that, and then he filed. Well, not only that, Your Honor, he was granted relief, continued to re-offend, and only months after being placed in proceedings did he even bother to file his late appeal. And again, this isn't about timeliness. It's about the board setting a threshold for when the finality rule should kick in. All right, let me take you to the statutory language that you pointed us to. You want to—the Congresswoman— Hold on, Judge Rajji. There's someone else on the line we can hear, whoever that person is. Please put yourself on mute. Excuse me, Carla, down on the phone. You're on mute yourself. Okay. Go ahead. The language that you focused us on is a formal judgment of guilt of the alien entered by a court. I do want to try and understand your reasoning here. Is it that Congress basically thought that the judgment was final when it was entered by the court, but the board is recognizing the reality that that would make no sense if the judgment could be overturned? And that's why it wants a merits argument, that it wants to know that that's what's at stake here, not just a challenge to the sentence or something else. Is that basically where you are? I think that's right, Your Honor. Okay. Now let's get to the possibility of satisfying that. Our clerk's office confirmed with the clerk's office at the appellate division that it's the trial court's fault for not transferring the records here. It's not Mr. Brathwaite's delay that's holding this up. How do you expect him to satisfy this, especially if you're going to insist on a brief? It's not Acosta's standard. That's a subsequent, I think, non-presidential decision. But how is a defendant supposed to satisfy this? I'm sorry, Your Honor. I'm not sure which decision you're talking about. That may have been the position of DHS, and it's not the position of the board. And to be clear, Mr. Brathwaite himself, in his brief, cites at least one, and I have in my hand at least five or six more, unpublished decisions from the board applying Acosta faithfully and, in fact, terminating proceedings where an alien had satisfied his burden under the second prong. I'm looking at Pramod Jumali, which I think requires, says that a mere letter from appellate counsel describing the anticipated grounds for appeal does not satisfy. You'll remember I asked Mr. Peng whether they could provide something akin to that, and he said, yeah, they've got a problem with one of the guilty pleas. Well, and what I think this proves, Your Honor, so if you don't mind, unfortunately, these cases, although no, I should say Peralta is another unpublished case, which is actually cited in Mr. Brathwaite's brief. And so I think what this does show is the sort of the applicability of this rule and how it depends on the evidence, because in Peralta itself, the alien submitted evidence showing that he was challenging the conviction on substantive grounds because, inter alia, he alleged that his former criminal attorney provided ineffective assistance of counsel. I don't believe this decision says exactly what that evidence was, but it was enough in that case for the immigration judge and the board to agree that termination was the appropriate result. Okay, so yes, then, if Mr. Peng gives you the letter from appellate counsel that says, I've only been able to look at one of the convictions, but we're going to challenge this guilty plea, is this case over? The case is not necessarily over, Your Honor. I think at the least, or maybe even at the most, what that would justify is a remand for that evidence for the board and IJ to consider. And ACOSTA has been applied and has resulted in the termination of proceedings because the agency, both the IJ and the board, concluded that the decision was, I'm sorry, that the conviction was in fact non-final based on whatever evidence it was that petitioner submitted. There's an equal number of cases that go the other way, but in all of those cases... But the parties have a discussion now as to whether with the recent transcript there's enough for a remand? I mean, I guess we could, but this kind of proves the point, right? Mr. Brathwaite was on notice months before he was placed in proceedings and ACOSTA was the rule when his NTA was issued. I suppose there's nothing unreasonable about having that discussion, but what it doesn't mean is that the board is required to accept that evidence as conclusive as to the finality and to sort of change its decision in this case based on that evidence alone. Whether they should consider it or not, I'm happy to discuss with petitioners' counsel. And again, all that would presumably do is relieve this court of its obligation to once again consider this important question of both statutory interpretation and deference. And I will point out... And that's the problem, that when we come to statutory interpretation, all these things that you've been telling us are just lovely and interesting, but I find it very hard to read them in this language of the statute. I also understand your desire to have a decision, but the court is mindful that we are in... Our own courts are in a very difficult circumstance, and so are the state courts. We're not in normal times where, if there were reason to think that a defendant was dragging his feet or whatever, we might look differently at this. But I'm hard-pressed to know what more you want Mr. Peng or Mr. Brathwaite to do here, given the realities of the transfer of documents from New York. Well, and certainly, Your Honor, that's not for me to decide, that's for the board to decide. And again, I think it is important to note that unlike the cases that we've discussed, the case that you read, Peralta, other unpublished board decisions where some evidence other than just the late filed appeal motion was presented to the board, the cases go both ways. And so clearly the board is applying the rule in a way that makes sense because it's considering the specific evidence in each case. So if that's the case, and there is some sort of smoking gun, I suppose, that remains in Mr. Brathwaite's corner that he's willing to submit to the agency, frankly, Your Honor, I don't think a remand is necessarily the only way to accomplish that. I think if he reached out to DHS, they could file some sort of joint motion and pursue that with the board, but we can certainly discuss that. But I would point out one other thing... Why don't you finish up, since you're way over your time? I appreciate that, Your Honor. Thank you. I appreciate the court's indulgence. The only thing I'll mention, just to assuage any concerns about this, is this issue is coming back to the court in another petition that is on all fours with this case. It's Sophia. The docket number is 20-1526. So this is certainly not the end of this, but we're happy to take into account and consideration any further evidence. Thank you. Thank you very much. Mr. Peng, you have some rebuttal time. Yes, limited, so I'll try to get through all the points. Your Honor, I think to address the last question that was discussed, I think it's important to note that the finality of a conviction has consequences beyond just removal or non-removal. It also has consequences for Mr. Brathwaite's detention. He's been held in ICE detention since January 2019 because of 8 U.S.C. 1226C, the mandatory detention statute. And again, he could not overcome the presumption to say that his conviction should not subject him to mandatory detention. And so I think, again, it does propose, even if we remand this case, there's still, I think, a need to decide the issue of just what Mr. Brathwaite can do to adequately show that he overcomes a presumption. I think also, Your Honor, to return briefly to Judge Radji's question about, again, timeliness versus untimeliness, I think it's correct to say the presumption passed 35 days. And again, the disparate application from judges or the BIA shows that on the clear reading of, Your Honor, I see I'm out of time. May I briefly continue? You can finish up. Go ahead. Thank you. That again, the presumption can attach past 35 days based on a clear reading of J.M. Acosta. I'll wrap up by saying, again, we did identify a number of reasons in our brief about why this also, even at Chevron Step 2, proves unreasonable. Again, the protection of non-citizens due process rights, the importance of observing core federalism principles. And I would note also, even in cases like matter of Pickering or matter of Rodriguez-Ruiz, the BIA has said that New York State criminal courts should be given full faith and credit when they make a determination that's fully within their purview. We think deciding a direct appellate review is in their purview, and they should be entitled to make their determination rather than having an immigration judge or the board to go guess or second question those determinations. For those reasons, Your Honor, we believe J.M. Acosta should be overturned, and this case can be decided at Chevron Step 1. Thank you very much. Mr. Peck, decide to send your adversary a letter indicating that you've got a merits argument to make. Would you please make sure you copy the court? We can definitely do that, Your Honor. I will try to also reach out to appellate counsel to try to get more information on that. Thank you. Thank you. Thanks to all three of you. The court will reserve decision.